## SAMUELS' ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

## SAMUELS v. COMMISSIONER OF INTERNAL REVENUE
(two cases).

Nos. 255, 256, 257, Dockets 21868, 21869, 21870.

United States Court of Appeals, Second Circuit.

Argued May 10, 1951.

Decided May 31, 1951.

Frederick E. Weinberg, New York City, for petitioners.

Charles Oliphant, Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and S. Dee Hanson, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Before SWAN, AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

A partnership consisting of Michael Samuels (now deceased and represented by his estate) and his sons Sam Samuels and Isidore Samuels, in the taxable year 1944 was engaged in the manufacture of ladies' lingerie during the period January 1 to June 30, 1944 under the name of Empress Undergarment Company, and from July 1 to December 31, 1944 under the name of Sa-Bro Mills. The partners had equal interests in the business and filed a return for the Empress Undergarment Company for the period of January 1 to June 30, 1944, showing a net income of $48,467.29. This net income was distributed among the three partners who on March 12, 1945, filed individual income tax returns for that period. According to the findings of the Tax Court each of the partners understated his one-third of the partnership income by $11,306.20. The Tax Court accordingly assessed deficiencies plus 50% fraud penalties. By leave of this court, the three cases were consolidated on appeal.

Neither of the surviving partners nor the Estate of Michael Samuels appealed from the Tax Court's decision determining the deficiencies. While all admit that there were understatements aggregating $17,418.-61 they claim that the understatements were not fraudulent because they were due to the mistake of the accountant preparing their returns who had been misinformed as to the amount of accounts receivable that were outstanding at the opening of the taxable period. They also claim that partnership income with which they were individually charged to the amount of $5,500 (aggregating $16,500) represented purchases of goods in the black market and not fictitious transactions. But the Tax Court held that these items lacked adequate proof and

it rejected them as improper deductions. Accordingly the orders of the Tax Court increasing reported income by $17,418.61, and rejecting the deduction of $16,500, should stand and indeed is not sought to be reviewed by the taxpayers. The only question involved in the appeals to this court is whether the 50% fraud penalty was properly added to the tax deficiency adjudged against each of the taxpayers on the ground that they fraudulently understated their taxable income in order to avoid their just taxes within the meaning of Section 293(b) of the Internal Revenue Code, 26 U.S.C.A. § 293(b). It appears that all three partners knew the above facts and no contention is made that if fraud is found, the 50% penalty should not be assessed against all the petitioners.

In respect to the item of $17,418.61 the only excuse offered for this very substantial omission is that the auditor of the Empress Undergarment Company was not given a list of sales of merchandise which had been made to that amount and, therefore, had not included those sales in the tax return. Yet the information was available at all times and the inference of the Tax Court that the accounts receivable representing the above sales were fraudulently omitted from the returns seems legitimate if not quite inevitable. The finding of fraud in deducting the alleged purchases in the black market aggregating $16,500 was also justified. That any such purchases were made depended solely on the story of Sam Samuels that he had been told by his father Michael during the latter's lifetime that he had made purchases in the black market aggregating about $20,-000. That amount not only did not correspond with the $16,500 entered on the partnership return but no items or prices representing purchases of piece goods were either entered on the books or otherwise shown. If black market transactions to the above amounts were actually had they would have decreased *pro tanto* the deficiencies found by the Tax Court but those deficiencies are now unalterably fixed by the decision of the Tax Court, the correctness of which no one questions. We, therefore, are unable to sustain any defense based on the lessening of the deficiencies due to purchases in the black market. The deductions claimed on behalf of each taxpayer to the amount of $5,500 were without foundation. Under the circumstances the Commissioner and the Tax Court could reasonably find that the tax returns claiming the unfounded deductions were fraudulent. Cash transactions on the black market are designedly difficult to trace and are instinct with fraud. Taxpayers who engage in such activity must bear the consequences if they fail to keep sufficient records to justify as allowable deductions expenses incurred thereby.

Orders affirmed.